UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

KAYLIN ALEXANDER ROSCOE,

Defendant.

Case No. 19-cr-20537

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S EMERGENCY MOTION FOR REVOCATION OF DETENTION ORDER [#31]

### I. INTRODUCTION

On January 6, 2020, pursuant to a Rule 11 plea agreement, Defendant Kaylin Alexander Roscoe ("Defendant") pleaded guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).  ECF No. 26.  Defendant was initially released on an unsecured bond until January 27, 2020, when he consented to this Court's revocation of his bond. ECF Nos. 25, 27.  He is scheduled to be sentenced on May 19, 2020.  ECF No. 30.

Presently before the Court is Defendant's Emergency Motion for Revocation of Detention Order, filed on April 8, 2020.  ECF No. 31.  The Government filed a

Response on April 13, 2020.  ECF No. 32.  Upon the Court's request, ECF No. 33, the Government filed Defendant's medical records under seal, ECF No. 34. Defendant filed a supplemental brief to provide anecdotal information related to his health.  ECF No. 35.  A hearing on Defendant's Motion was held on April 20, 2020. ECF Nos. 36, 37.  For the reasons that follow, the Court will **DENY WITHOUT PREJUDICE** Defendant's Emergency Motion [#31].

## II. BACKGROUND

Defendant is twenty-seven years old and has resided in Detroit, Michigan for his entire life.  Def's Presentence Investigation Report 17–18.  On July 22, 2019, agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) executed a search warrant for Defendant at 20124 Tireman, Detroit, Michigan.  ECF No. 1, PageID.3.  Defendant was in the residence, along with an adult female and two minor children.  ECF No. 26, PageID.67; ECF No. 32, PageID.116.

During their search, agents located one knotted baggie, with approximately five gross grams of suspected heroin, on the kitchen counter; one knotted baggie, with approximately one gram of suspected heroin, on the microwave; and two digital scales.  ECF No. 26, PageID.67.  They also discovered a razor next to a box of baggies.  ECF No. 32, PageID.116.  Lab testing later revealed that a fentanyl mixture was contained in the baggies.  ECF No. 26, PageID.67.  In addition, agents found a Smith & Wesson Model M&P .380 caliber semiautomatic pistol, which was loaded

with one live round.  ECF No. 1, PageID.3.  A .380 magazine and thirty-six rounds of .45 caliber ammunition were also discovered.   ECF No. 32, PageID.118. Defendant acknowledged possession of the firearm, explaining that he obtained it for protection.   *Id.*   He also admitted to possessing the controlled substances, asserting that they were for personal use.  *Id.*

Defendant was arrested on a criminal complaint for two offenses: (1) felon in possession of a firearm; and (2) possession with intent to distribute heroin.  ECF No. 1.  On July 26, 2019, United States Magistrate Judge Mona K. Majzoub released Defendant on bond with several conditions.  ECF No. 9; *see also* ECF No. 32, PageID.119.  Defendant complied with many of the conditions, including reporting to Pretrial Services; attending substance abuse counseling; and remaining employed. ECF No. 31, PageID.99.  In his instant Motion, Defendant concedes that he came before the Court "several times for review of his overall performance on bond, specifically as it related to his use of marijuana."  *Id.* at PageID.99–100.  The Court takes notice that while under Pretrial Services supervision, Defendant tested positive for marijuana on eight occasions.  Def's Presentence Investigation Report 19.

On January 6, 2020, Defendant pleaded guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count One) and possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) (Count Two) of the First Superseding Indictment.  ECF No. 26.  On January 10,

2020, Pretrial Services petitioned the Court to order Defendant to appear for a bond review hearing, asserting that Defendant was in violation of his bond by continuing to test positive for marijuana. ECF No. 25, PageID.63–64. The Court conducted a hearing on January 27, 2020. ECF No. 25. At the hearing, Defendant consented to the Court's revocation of his bond. ECF No. 27. Defense counsel represented that she and Defendant reviewed his failure to comply with the Court's "clear directive," as well as Defendant's "circumstances, what he's been going through really on a daily basis in terms of stress and life." Further, counsel explained that Defendant had been "working and trying very hard but recognizes that he's fallen short certainly as it relates to the continued testing positive[.]"

Defendant is currently being held at St. Clair County Jail. ECF No. 31, PageID.100. He alleges that he has struggled with asthma since childhood. ECF No. 31, PageID.108. Pretrial Services documented Defendant's reportedly "frequent" hospitalization as a child due to his asthma. Def's Presentence Investigation Report 18. It also included Defendant's alleged use of an Albuterol inhaler in its report. *Id.* On April 13, the Court ordered the parties to submit medical records, as well as any supplemental documents related to Defendant's purported medical condition. The Government timely filed Defendant's medical records from St. Clair County Jail under seal. ECF No. 34. Defendant timely filed a supplemental brief to provide anecdotal information related to his health. ECF No. 35.

### III. LAW & ANALYSIS

### A. COVID-19

COVID-19 is an abbreviation for the novel coronavirus disease of 2019, a respiratory illness that spreads easily and sustainably in the community through respiratory droplets produced when an infected person coughs or sneezes. *See Centers for Disease Control and Prevention Coronavirus Disease 2019 Frequently Asked Questions,* Center for Disease Control https://www.cdc.gov/coronavirus/2019-ncov/faq.html#How-COVID-19-Spreads (last updated Apr. 13, 2020). While it is thought that people are most contagious when symptoms are present, the virus has also been detected in asymptomatic persons. *See id.*

There is no vaccine to prevent COVID-19, nor is there antiviral medication that can treat it. *Id.*; *see also* ECF No. 132, PageID.614. According to the Center for Disease Control ("CDC"), "[t]he best way to prevent illness is to avoid being exposed to the virus." *Id.* The CDC recommends, among other things, that people clean their hands often or use hand sanitizer when soap is unavailable; avoid close contact with other people (at least six feet in distance); and clean and disinfect frequently touched surfaces daily, such as tables, doorknobs, light switches, and countertops. *Id.* The CDC also recommends that if an individual becomes sick, he

or she should isolate from others by staying in a specific sick room and using a separate bathroom if available.  *Id.*

The CDC has indicated that certain classes of individuals are at higher risk for developing severe illness if exposed to COVID-19.  *Id.*  Older adults—65 or older—and people suffering from underlying medical conditions, such as moderate to severe asthma, chronic lung disease, serious heart disease, severe obesity, diabetes, liver disease, kidney disease; or people who are immunocompromised; and those who have prolonged use of corticosteroids and other immune weakening medications are at higher risk of exposure to COVID-19.  *Id.*  In the instant case, Defendant alleges that he has struggled with asthma since childhood.  ECF No. 31, PageID.108.  Further, the Court takes notice that, as of April 14, 2020, Defendant is using an inhaler for his condition.  ECF No. 35, PageID.239.  While it has been accepted that older adults are the most vulnerable, the CDC reported that 38% of the 508 hospitalized patients were younger–between 20 and 54 years of age.  *See Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19)–United States, February 12-March 16, 2020*, Center for Disease Control (Mar. 18, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm.

At the time of this writing, the majority of states have issued stay-at-home orders, including Governor Gretchen Whitmer of Michigan.  Governor Whitmer issued a state of emergency when the State's first two cases of coronavirus were

reported on March 10, 2020.  Executive Order, No. 2020-04 (Mar. 10, 2020).

Governor Whitmer has since issued a series of other executive orders to help prevent

the spread of this novel disease.  *See Executive Orders*, Michigan.gov,

https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705---,00.html

 (last visited Apr. 15, 2020).  Even with such executive action, Michigan continues

to experience staggering numbers of confirmed COVID-19 cases and deaths.  At the

time of this writing, there are 32,000 cases confirmed cases in Michigan. *See MDOC*

*Response and Information on coronavirus (COVID-19)*, Medium,

https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-

coronavirus-covid-19-250f43144337 (last updated Apr. 20, 2020) [hereinafter

Medium MDOC Response and Information].  There are now 2,468 lives lost to

COVID-19 in Michigan alone.  *Coronavirus – Michigan Data*, Michigan.gov,

https://www.michigan.gov/coronavirus/0,9753,7-406-98163-520743--,00.html (last

updated Apr. 20, 2020).

Incarcerated individuals, and the employees who work in correctional

institutions, are not immune to this pandemic.  *See* ECF No. 132, PageID.613.

Indeed, these individuals face an even greater risk.  On March 23, 2020, the CDC

acknowledged that correctional and detention facilities "present[ ] unique challenges

for control of COVID-19 transmission among incarcerated/detained persons, staff,

and visitors." *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html [hereinafter CDC Guidance on Correctional and Detention Facilities]; *see also United States v. Eubanks*, No. 17-20184, 2020 WL 1814090, at *1 (E.D. Mich. Apr. 9, 2020). COVID-19 is dangerous everywhere, but the novel disease is especially harmful within correctional institutions, where incarcerated individuals have a limited ability to exercise encouraged community practices such as social distancing and frequent handwashing. *See* CDC Guidance on Correctional and Detention Facilities; *see also* ECF No. 132, PageID.613 ("The recommended social distancing measures are nearly impossible to implement and adhere to in detention facilities where detained individuals share dining, bathing and sleeping areas[.]"); *see also* ECF No. 31, PageID.102. Further, a "low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, [and] highly congregational environments" increase the risk of danger to incarcerated individuals. CDC Guidance on Correctional and Detention Facilities; *see also United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020).

As of April 20, 2020, there are 574 reported cases of COVID-19 in Michigan correctional facilities. *See* Medium MDOC Response and Information. Ten percent

of these prisoners have been sent to community hospitals.  *Infection rate at Michigan prison exceeds New York, Chicago jail hot spots*, Detroit Free Press (Apr. 15, 2020, 8:51 PM) https://www.freep.com/story/news/local/michigan/2020/04/16/infection-rate-michigan-prison-exceeds-new-york-chicago-jail-hotspots/2987935001/.  These numbers are growing sharply.  Indeed, one facility in Michigan—Parnell Correctional Facility—has a percentage of infection rate which exceeds the 7% Cook County jail in Chicago, which as of last week, was the largest known source of infections in the United States.  *Id.*  According to MDOC, there have been 26 COVID-19 related deaths within its prisons, including twenty-one inmates.  Medium MDOC Response and Information.

To its credit, MDOC has implemented a number of measures to reduce COVID-19's spread in its facilities.  *See 2020 Coronavirus (COVID-19) Response Q&A*, Michigan Department of Corrections, https://www.michigan.gov/corrections /0,4551,7-119-9741_12798-521973--,00.html (last visited Apr. 15, 2020); *see also* Medium MDOC Response and Information.  For example, all MDOC staff transporting prisoners on or off grounds are required to be dressed in full personal protective equipment (PPE).  *See* Medium MDOC Response and Information. MDOC is following the Michigan Department of Health and Human Services protocol and is accordingly scheduling appointments between facility healthcare staff and prisoners who have presented COVID-19 symptoms.  *Id.*

**B. Defendant's Arguments Pursuant to 18 U.S.C. §§ 3142(i), 3143**

Defendant initially moved this Court to release him on bond pending sentencing pursuant to 18 U.S.C. § 3143(a)(1) and 18 U.S.C. 3142(i).  ECF No. 31, PageID.109, 111.  At the hearing, Defendant clarified that § 3143(a)(1) is the more appropriate statute.  The Government contests Defendant's release under both provisions.  ECF No. 32, PageID.120.

**1. 18 U.S.C. § 3142(i)**

Section 3142(i) presumes that a court has already determined that the defendant must be detained pending trial, but permits a "subsequent order" for release to the "custody of a United States marshal or another appropriate person" for the two limited reasons of (1) defense preparation or (2) some other "compelling reason."  18 U.S.C. § 3142(i).  Such a release must be "temporary."  *Id.*; *see also United States v. Shelton*, No. 3:19-cr-14, 2020 WL 1815941, at *3 (W.D. Ky. Apr. 9, 2020) ("[T]he release must be 'temporary,' no longer than needed to complete the 'necessary' defense preparations or to resolve the other 'compelling' circumstances.").  The defendant has the burden of establishing circumstances warranting temporary release pursuant to § 3142(i).  *Shelton*, 2020 WL 1815941, at *3 (citation omitted); *United States v. Smoot*, No. 2:19-cr-20, 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020).

This provision of the Bail Reform Act "covers the situation where an individual is detained while awaiting *trial*—not where a person has been convicted by guilty plea and is awaiting sentencing." *United States v. Johnson*, No. 2:17-cr-20489, 2020 WL 1821099, at *2 (E.D. Mich. Apr. 10, 2020) (emphasis added). Several courts in the Sixth Circuit have recognized that § 3142(i) applies only to a criminal defendant seeking release pending trial. *See id.*; *see also United States v. Santiago*, No. 4:19-cr-405-2, 2020 WL 1820575, at *1 (N.D. Ohio Apr. 10, 2020); *United States v. Melendez-Perez*, No. 1:19-cr-184-2, 2020 WL 1814150, at *1 (N.D. Ohio Apr. 8, 2020). Additionally, district courts in other circuits have similarly rejected the applicability of § 3142(i) for a criminal defendant awaiting sentencing. *See United States v. Harris*, No. 19-356, 2020 WL 1503444 (D.D.C. Mar. 27, 2020) (evaluating motion for immediate release due to COVID-19 of defendant awaiting sentencing under § 3143); *United States v. Rollins*, No. 19-cr-34S, 11-cr-251S, 2020 WL 1482323, at n.1 (W.D.N.Y. Mar. 27, 2020) (finding that § 3142(i) does not apply to individuals seeking release pending sentencing due to COVID-19). While the Court recognizes that one court in this district has held that this provision applies to a defendant who has pleaded guilty and is thus pending sentencing, *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *3 (E.D. Mich. Mar. 27, 2020), the Court is inclined to rule with the majority of other courts within this circuit on this

statutory interpretation question. Additionally, the Court recognizes Defendant's assertion at the hearing to only move for relief under 18 U.S.C. § 3143(a).

Accordingly, the Court concludes that 18 U.S.C. § 3142(i) does not apply to Defendant's situation.[1] Rather, release for a criminal defendant who has pleaded guilty and is awaiting sentencing, as relevant here, is governed by 18 U.S.C. § 3143. The Court will thus evaluate Defendant's request for release under this provision.

## 2. 18 U.S.C. § 3143

Section 3143(a)(1) provides in relevant part: "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence ... be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ...." 18 U.S.C. § 3143(a)(1). This section "creates a presumption against release which the defendant must overcome." *United States v. Bowman*, 98 F.3d 1343 (6th Cir. 1996) (Table) (citing *United States v. Vance*, 851 F.2d 166, 170 (6th Cir. 1988)). In other words, Defendant must

---

[1] The Court recognizes the special risks that COVID-19 poses to incarcerated individuals, like Defendant, in a particular facility afflicted by the pandemic. The Court does not take lightly the communication difficulties between incarcerated individuals and their attorneys during this time as several precautions are in place to prevent and mitigate the spread of COVID-19. *See, e.g.*, ECF No. 31, PageID.111. In an appropriate case, the circumstances of the COVID-19 pandemic, and its impact on a particular defendant who is awaiting trial—not a defendant who has been convicted and is awaiting sentencing—could persuade the Court to rule in favor of pretrial release for the necessary reason of preparing his or her defense.

establish by clear and convincing evidence that he is not likely to flee or pose a danger to the community if released.  "Notwithstanding the mandatory detention provisions of § 3143, a district court may release a defendant pending sentencing "under appropriate conditions ... if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate."  *United States v. Johnson*, No. 2:17-cr-20489, 2020 WL 1821099, at *2 (E.D. Mich. Apr. 10, 2020) (quoting 18 U.S.C. § 3145(c)) (emphasis in original). !

Here, Defendant argues that the exceptional circumstances presented by the COVID-19 pandemic release warrant his release.  ECF No. 31, PageID.108.  As discussed at length in the first section of its analysis, the Court is concerned with the unique challenges which COVID-19 presents to the vulnerable communities in correctional facilities.

"While the generalized risks of COVID-19 cannot be disputed, courts evaluating whether release from custody is necessary must evaluate the particularized risks posed to an individual defendant."  *United States v. Sykes*, No. 03-cr-80028, 2020 WL 1846948 at *4 (E.D. Mic., Apr. 13, 2020) (citation omitted). Some courts evaluating the impact of COVID-19 on the pretrial analysis under § 3143(a) have considered the following factors: ‼

> (1) the original grounds for the defendant's detention; (2) the specificity of the defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other

COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*See id.* (quoting *United States v. Clark*, No. 19-40068, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) (recognizing that while these factors have been applied in the context of motions for pretrial release under 18 U.S.C. § 3142(i), "they are nevertheless relevant to [defendant's] motion for release pending sentencing.").  In *United States v. Johnson*, another court in this district set forth a modified set of factors, based on those provided above, in considering whether a defendant, who has already been convicted and is awaiting sentencing, has set out exceptional reasons in favor of release:

> (1) the original grounds for the defendant's pretrial detention; (2) the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.); (3) the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment; and (4) whether conditions of release can be imposed to mitigate COVID-19 risks to the defendants and to the community.

No. 2:17-cr-20489, 2020 WL 1821099, at *3 (E.D. Mich. Apr. 10, 2020).  The Court finds these factors constructive for the instant case, as Defendant, similar to the defendant in *Johnson*, has already been convicted and is awaiting sentencing.

### i.    Defendant's COVID-19 Concerns

The Court will begin by assessing the second factor: Defendant's stated COVID-19 concerns.  The Court acknowledges that Defendant's preexisting health

condition warrants heightened concern about his potential exposure to COVID-19. Specifically, Defendant has asthma—a precondition which he has struggled with since childhood.  ECF No. 31, PageID.108; Def's Presentence Investigation Report 18.  According to Defendant's Presentence Report, Defendant has reported that he was "frequently hospitalized as a child due to asthma."  Def's Presentence Investigation Report 18.  Further, as an adult, Defendant informed Pretrial Services that he was hospitalized overnight due to his asthma; however, Defendant was unable to recall the hospital name or location.  *Id.*

Defendant's medical records at St. Clair County Jail indicate that he requested medical assistance for his asthma on at least five separate occasions between April 1 and April 7, 2020.  ECF No. 34, PageID.156, 214, 223–27. Notably, on April 7, Defendant inquired about his access to a kite inhaler.  *Id.* at PageID.201.  Defendant received an inhaler seven days later.  ECF No. 35, PageID.238.  The Court takes Defendant's medical concerns seriously, as the CDC has warned that "[p]eople with moderate to severe asthma may be at higher risk for getting very sick from COVID-19."  *People Who Are At Higher* Risk, CDC (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. Indeed, the Court disagrees with the Government's dismissal of Defendant's medical concerns as "speculative" in light of the CDC's guidance, as well as Defendant's

consistent medical requests at St. Clair County Jail.  *See* ECF No. 32, PageID.132. This factor thus weighs in Defendant's favor.

The other three *Johnson* factors, however, weigh against revoking the Court's prior order of detention at this time.  The original grounds for Defendant's detention; the conditions at St. Clair County Jail; and Defendant's proposed release plans, as well as the likelihood of increasing others' exposure, all weigh against revoking the Court's detention order.

### ii.    Defendant's Current Detention

As to the first factor, the original grounds for Defendant's detention weigh against his release awaiting sentencing.  The Court agrees with Defendant's claim that he was compliant with several bond conditions during his initial release on an unsecured bond from July 2019.  ECF No. 31, PageID.99.  Specifically, Defendant reported to Pretrial Services; attended substance abuse counseling at Salvation Army Adult Rehabilitation Center; and remained employed.  *Id.*  The Court takes notice that Defendant was discharged from his substance abuse program in September 2019 for possessing a cellular phone—not for a positive test for a controlled substance. Def's Presentence Investigation Report, 19.

The Court agrees with the Government's description of Defendant's overall adjustment to federal pretrial supervision, however.  ECF No. 32, PageID.123. Defendant came before the Court several times for his overall performance on bond,

specifically as it related to his use of marijuana.  Defendant tested positive for marijuana eight times, including the day of his presentence interview on January 16, 2020, before the Court eventually revoked his bond on January 27, 2020.  Def's Presentence Investigation Report, 19.  Further, Defendant purportedly failed to contact Pretrial Services on November 1, 2019 when his GPS tether died.  ECF No. 32, PageID.123.  The Government also alleges that Defendant violated his curfew for "non-approved reasons" on November 4, 2019.  *Id.*  Pretrial Services confirmed these allegations in its Presentence Investigation Report.  *See* Def's Presentence Investigation Report, 4.  While it is true that Defendant has appeared for each of his federal court dates in the instant case, ECF No. 31, PageID.112, the Court remains unconvinced that Defendant, who has demonstrated his inability to comply with conditions of release, will comply with a new set of strict conditions while awaiting his sentencing next month.

Accordingly, this factor weighs against revoking the detention order.

### iii.    Conditions and Availability of Appropriate Medical Treatment at St. Clair County Jail

Next, in evaluating the third factor, the Court finds that St. Clair County Jail is taking reasonable precautions to mitigate the risks of spread of COVID-19 among incarcerated individuals and staff members at this time.  The Court acknowledges that as of this writing, there are seven inmates at St. Clair County Jail who have tested positive for COVID-19.  ECF No. 32, PageID.130.  Further, there are eleven

prisoners under protocol watch for their display of symptoms. The Court also denotes that two correctional deputies and one nurse at the jail have tested positive. Jackie Smith, *UPDATE: 262 coronavirus cases, 9 deaths reported in St. Clair County*, MSN, https://www.msn.com/en-us/news/us/update-coronavirus-cases-reach-16-in-st-clair-county-first-death-reported-at-lake-huron-medical/ar-BB11OhgL (last updated Apr. 17, 2020).  These three staff members are off duty until they recover. *Id.*

These statistics, while alarming, refer to the jail's general population.  As of April 10, 2020, the Government confirmed that Defendant is currently detained in a "pod" in the St. Clair County Jail in which no inmate has tested positive for COVID-19 or has been placed on isolation protocol.  ECF No. 32, PageID.131.  Defense counsel confirmed this; however, she did denote that one prisoner within Defendant's pod has a persistent cough.  *See* ECF 35, PageID.238.

The Court denotes that St. Clair County Sheriff Tim Donnellon has introduced several efforts to mitigate the continued spread of COVID-19 within the facility. ECF No. 31, PageID.107.  On April 1, 2020, seven days before the first positive case was reported in the jail, Donnellon announced that he was working with the St. Clair County courts and prosecutors to release non-violent inmates who are elderly, sick,

and vulnerable.[2]  Laura Fitzgerald, *St. Clair County Sheriff, courts reducing jail population to lessen the spread of coronavirus* (Apr. 2, 2020 10:36 am) https://www.thetimesherald.com/story/news/2020/04/02/st-clair-county-jail-reducing-inmate-population-during-coronavirus-pandemic/5110937002/.    Indeed, as of April 2, 2020, the jail had about 330 inmates, while most of the time, the jail is near its capacity of 500 inmates.  *Id.*  Donnellon also confirmed that corrections deputies are following protocols and guidelines to reduce their risk of exposure to COVID-19, such as moving the morning briefing to the jail's front lobby.  *Id.*  He also explained that all new inmates are being screened for symptoms.  *Id.*  Donnellon asserted that he and his staff look at the number of inmates on a daily basis and determine what they can do to "lessen potential dangers to [their] inmates."  *Id.*

The Government also highlights several measures which the jail has been taking to ensure that COVID-19 is contained and treated.  ECF No. 32, PageID.132.  For example, the jail segregates and isolates individuals with suspected cases of COVID-19, or who are awaiting test results; places individuals who are displaying symptoms, but who fail to meet the threshold to be tested, on a COVID-19 protocol to be segregated, isolated, and monitored[3]; removes individuals from the general

---

[2] As a USMS prisoner, Defendant is not eligible for release by the St. Clair County sheriff.  ECF No. 31, PageID.107.

[3] The Court takes notice of defense counsel's allegation at the hearing that some prisoners who are not feeling well are declining to report their symptoms out of fear of being segregated within the jail.

population when symptoms or contact is suspected; provides individuals with clean clothing when symptoms or contact is suspected; distributes masks to detainees and inmates on COVID-19 protocol; offers staff members the options to wear masks; and remains committed to moving inmates and detainees in order to ensure adequate space in housing. *Id.* These measures can work to effectively mitigate the risks of COVID-19 transmission in the St. Clair County Jail.

In addition to these procedures, the Court finds that there is an adequate availability of appropriate medical treatment at St. Clair County for Defendant. As explained above, Defendant has requested and has received medical treatment for his precondition. His records indicate that the medical staff at St. Clair County Jail have been responsive to his specific concerns surrounding his asthma condition since April 1, when he indicated that he needed "breathing treatment." ECF No. 34, PageID.156. His treating nurse listened to his lungs and determined that "all fields [were] clear." *Id.* Further, the nurse reported that Defendant failed to show signs of difficulty or distress. *Id.* Nevertheless, after several other requests and visits, Defendant received an inhaler on April 14. ECF No. 35, PageID.238. The Court thus finds that Defendant's asthma is currently being treated with appropriate medicine and attention.

Accordingly, the Court finds that this third factor also weighs against revoking the detention order.

###### iv.    Defendant's Proposed Release Plan

Finally, the circumstances surrounding Defendant's proposed release plan weigh against allowing him to await sentencing on bond.  The Court is primarily concerned with this final factor as it relates to Defendant's danger to the community.

Defendant suggests three separate spaces for him to reside awaiting sentencing.  First, Defendant explains that his long-time girlfriend and mother of his two children, Nakesha Horton, is an "appropriate person" to act as a third-party custodian as he awaits sentencing.  ECF No. 31, PageID.111.  He asserts that Ms. Horton has been working consistently over the past year and that she is "responsible and willing to assume all of the responsibilities and burdens of being a third-party custodian." *Id.* at PageID.111–12.  The Government contests Defendant's proposed plan, emphasizing that these conditions fail to present any change from Defendant's previous time on bond.  ECF No. 32, PageID.134.  It argues that the presence of Ms. Horton and children did not deter Defendant from continuing to test positive for marijuana throughout his bond last year.  *Id.*

Pretrial Services also opposes Defendant's proposed plan to reside with Ms. Horton.  In its April 20, 2020 Status Report, Pretrial Services reiterated Defendant's display of a "continuous pattern of disregard for his bond and conditions while he was on bond.  [He] was aware of the consequences of not complying with the Court's directives."  Pretrial Services further indicated that Defendant was not deterred by

the consequences of his past violations on bond.  The Court weighs Pretrial Services'
report strongly in its consideration of this factor.

      While the Court takes notice of Ms. Horton's reported distress by Defendant's
use of drugs, Def's Presentence Investigation Report, 19, and her willingness to
speak to the Court on her responsibilities and burdens of being a third-party
custodian, it does not find that this residence is an appropriate space for Defendant.
The Court agrees with the Government's and Pretrial Services' concerns, as
Defendant fails to differentiate this proposed release plan from his prior, zero
tolerance policy under his unsecured bond.  Additionally, the Court denotes that at
the time of the ATF agents' execution of a search warrant for the instant charges,
Defendant was found in his home with Ms. Horton and his two children.  ECF No.
26, PageID.67; ECF No. 32, PageID.116.  There, the ATF agents confiscated a
firearm, along with controlled substances and related instruments.  ECF No. 32,
PageID.116–18.  These circumstances cast further doubt on the adequacy of
Defendant's proposed release plan, namely, the danger to the community and the
family members within his home.

      After the hearing, defense counsel provided the Court with two alternative
places for Defendant to reside awaiting sentencing: his father's or his mother's
Detroit residences.  In its April 20, 2020 Status Report, Pretrial Services expressed
its hesitations with Defendant possibly returning to his father's residence.

Specifically, it denoted that as of December 3, 2019, this residence had "numerous occupants," which would make it difficult for Defendant to self-quarantine. Further, Pretrial Services asserted that Defendant continued to test positive for marijuana while previously residing at this residence during his bond. The Court is thus not persuaded that this second proposal would permit Defendant to safely practice social distancing. The Court is ultimately concerned for the safety of the other occupants in this residence should Defendant be released on bond awaiting sentencing.

As to Defendant's third proposed release plan, the Court will keep Defendant's mother's address in mind should Defendant present the Court with additional information concerning the number of COVID-19 cases within his "pod" at St. Clair County Jail. The Court does not have enough information about Defendant's mother's abilities to assume all of the responsibilities and burdens of acting as a third-party custodian for Defendant's release at this juncture.

Finally, the Court takes seriously Pretrial Services' current abilities to supervise Defendant in analyzing this factor. In its Response, the Government emphasizes the strain of limited resources which Pretrial Services and local law enforcement is currently operating within during the COVID-19 pandemic. *Id.* at PageID.125–26. Specifically, the Government alleges that Pretrial Service officers have been directed to protect themselves from potential infection by staying six feet away from the defendants which they supervise; ceasing physical inspections of

tethers; and conducting "virtual tours" of defendants' homes. *Id.* at PageID.126. Further, the Government purports that there is a nationwide shortage of tethers. *Id.* Even more troubling, the Government explained at the hearing that Pretrial Services officers have not been drug testing defendants during this time. The Court agrees with the Government that this is a major concern for this case in light of Defendant's pattern of noncompliance. Defendant's past and several violations indicate that he likely requires close monitoring for his drug use; however, the ability of such close monitoring remains questionable during the COVID-19 pandemic. The Court concludes that Defendant's instant Motion does not present any new information to allow the Court to conclude that he no longer poses a danger to the community. Accordingly, this final factor weighs against revoking the detention order.

Accordingly, the Court finds that, in weighing Defendant's medical condition against all other relevant considerations, the evidence does not support releasing him and revoking its prior order of detention at this juncture. These factors do not demonstrate that Defendant's release pending sentencing is warranted in light of the risks presented by the COVID-19 pandemic. In sum, Defendant's instant Motion does not contain enough information that would allow the Court to conclude that he no longer poses any danger to the community.

## C. Defendant's Detention Going Forward

The Court nevertheless remains concerned for Defendant's particular susceptibility to COVID-19 due to his asthma.  Further, the Court is alarmed by the number of positive cases in St. Clair County Jail's general population.  At the hearing, defense counsel informed the Court that she received conflicting data regarding the number of positive cases at the jail. The Government was unable to speak to this disparity.  The Court finds that this lack of information is unsettling, especially as the virus continues to spread at a swift and stunning speed.

Accordingly, Defendant should submit documentation concerning any additional health concerns, as well as immediately alert the Court if a COVID-19 case is confirmed within his "pod" at the St. Clair County Jail, so that the Court can properly revisit the aforementioned factors for Defendant's claim pursuant to 18 U.S.C. § 3143(a).

## V. CONCLUSION

For the reasons articulated above, **IT IS ORDERED** that Defendant's Emergency Motion for Revocation of Detention Order is **DENIED WITHOUT PREJUDICE** [#31].

**IT IS FURTHER ORDERED** that Defendant shall submit documentation concerning any additional health concerns, as well as immediately alert the Court if

a COVID-19 case is confirmed within his "pod" at the St. Clair County Jail, so that

the Court can properly revisit Defendant's claim.

**IT IS SO ORDERED.**

Dated:        April 21, 2020


s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 21, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager